THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATALIE BRUNNER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF LAKE STEVENS, ANDREW THOR, DAN LORENTZEN, and DOES 1-500,<br><br>　　　　　Defendants. | CASE NO. C15-1763-JCC<br><br>ORDER GRANTING SUMMARY JUDGMENT |

This matter comes before the Court on the motions for summary judgment by Defendants City of Lake Stevens and Dan Lorentzen (Dkt. No. 56) and Defendant Andrew Thor (Dkt. No. 58). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motions for the reasons explained herein.

**I.   BACKGROUND[1]**

Plaintiff Natalie Brunner[2] and Defendant Andrew Thor met online and entered into a

---

[1] The facts are viewed in a light most favorable to the plaintiff, as is appropriate on summary judgment review. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

[2] Brunner filed this suit as "Natalie Brunner." (*See* Dkt. No. 1.) According to Thor, Brunner's "true legal name is Natalie Porter," and Thor refers to her as such throughout his briefing. (Dkt. 58 at 1.) This distinction is legally irrelevant and appears to be an improper attempt to antagonize Brunner by calling attention to her marital status. The Court will refer to Brunner by her chosen name.

personal relationship in early 2011. (Dkt. No. 59-1 at 13.) At the time, Brunner believed that she was in a relationship with "Drew Kidd." (*Id.* at 18.) Over the course of their three-and-a-half-year relationship, Thor crafted numerous stories about his identity in an attempt to hide the fact that he was married with a family. (Dkt. No. 59-5 at 3.) Thor repeatedly lied about his occupation, claiming he was employed by the U.S. Army Special Forces, British Special Air Services, and the U.S. Central Intelligence Agency. (*Id.*) In reality, Thor was a police officer with the Lake Stevens Police Department (the Department). (Dkt. No. 59-4 at 2.)

In May 2013, Brunner was followed to her sister's home by a black SUV. (Dkt. No. 57-1 at 31-32.) As she got out of her car, the SUV passed at a slow pace, then turned around and drove by once more. (*Id.* at 31.) Brunner saw multiple men in the car, with Thor sitting in the middle seat. (*Id.* at 31-32.) She thought this was strange, because she believed he was out of the country. (*Id.* at 32.) The car sped off quickly. (*Id.*) When Brunner asked Thor—whom she still believed to be Drew Kidd—he told her he drove by because "his team was in Seattle for something." (*Id.*) Later, when Brunner discovered Thor's true identity, she came to believe that the men in the SUV were Thor's fellow law enforcement officers. (Dkt. No. 76 at 8.)

Then, in November, four Pierce County Sheriff's deputies came to Brunner's townhouse in Puyallup. (Dkt. No. 57-1 at 50-51.) They told Brunner that there was a kidnap victim named Brittany who called and said she was at Brunner's address. (*Id.* at 51.) Brunner's address was complicated and she had recently moved in, so she felt it was "a little odd and bewildering" that someone would have given her exact address. (*Id.* at 52.) Brunner later saw on Facebook that one of the deputies was in a picture with Thor and that the deputy was in a relationship with a woman named Brittany. (*Id.*)

In October 2014, Brunner and Thor took a trip together to Anacortes. (Dkt. No. 59-1 at 43; Dkt. No. 59-4 at 4.) During that trip, Thor asked Brunner if she wanted to see the "book report" he had on her. (Dkt. No. 59-1 at 47.) Thor showed Brunner several pages of personal information about her, including her driver's license and Social Security card. (*Id.*) Thor then

wanted to show Brunner his guns, even though she had told him guns made her uncomfortable. (*Id.* at 48.) Afterwards, at about 1:00 a.m., Thor suggested they take a walk. (Dkt. No. 59-4 at 4.) During the walk, Thor told Brunner "a story from a recent mission during which he had captured and interrogated a terrorist leader and killed his body guards by poisoning them and then shooting them to finish them off." (*Id.*)

Brunner's mother and friends had told her several times that "something was off with Drew" (referring to Thor by the name he gave Brunner). (*Id.* at 5.) After the weekend in Anacortes, Brunner researched Thor online. (*Id.*) She had seen a military ID card for "Andrew Thor" during an earlier visit with him, so she typed that name into Google. (*Id.*) Her search turned up a link to a TV news video featuring Thor in his Department uniform speaking about identity theft. (*Id.*) Brunner was shocked. (*Id.*) A subsequent Facebook search revealed that Thor was married with a child. (Dkt. No. 57-1 at 55.)

Once Brunner became aware of Thor's real identity, she contacted the Department and informed them of Thor's conduct. (*See* Dkt. No. 59-4.) Brunner later learned that Thor had accessed her confidential information using the Department database. (Dkt. No. 57-1 at 46.)

The Department placed Thor on paid leave and investigated his conduct. (Dkt. No. 57-2 at 6.) The findings of the investigation included the following: (1) "Officer Thor used information he obtained as a result of his employment for personal use, without the express permission of the Chief of Police or his designee"; (2) "Officer Thor engaged in a pattern of wrongful and unlawful exercise of authority, criminal, dishonest, and disgraceful conduct, and other on-duty and off-duty conduct which is unbecoming of this department and clearly contrary to department rules"; and (3) "[t]here is insufficient evidence that Officer Thor disseminated any protected information to a party that did not have a right or need to know." (*Id.* at 7-8.) As a result of the investigation, Thor resigned. (*See id.* at 7.)

Brunner took out a restraining order against Thor. (Dkt. No. 50 at 2.) However, she believes that he continued to research and monitor her online. (*Id.*)

ORDER GRANTING SUMMARY JUDGMENT
PAGE - 3

On November 9, 2015, Brunner filed the present suit against Thor, Department Chief Dan Lorentzen, and the City of Lake Stevens. (Dkt. No. 1 at 1.) She alleged violations of 42 U.S.C. § 1983, violation of the Washington Constitution, negligence, assault, battery, and fraud and misrepresentation. (Dkt. No. 1 at 13-20.)

Defendants now move for summary judgment dismissal of all claims. (Dkt. Nos. 56, 58.)

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248-49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B.  Section 1983

Count One of Brunner's complaint makes a § 1983 claim against Thor,[3] alleging violations of Brunner's liberty, privacy, and equal protection rights, as well as her rights against

---

[3] Brunner's complaint actually names all Defendants under this count. (*See* Dkt. No. 1 at 13.) However, she alleges no actual conduct on the part of any other Defendant with respect to these claims. Accordingly, the alleged liability of Chief Lorentzen and the Department will be analyzed only as to Count Two.

excessive force and unreasonable search and seizure. (*See* Dkt. No. 1 at 13-14.) Count Two alleges a § 1983 claim against Chief Lorentzen and the Department based on their supervision of Thor. (*Id.* at 14-15.)

### 1. Standards: Section 1983 and Qualified Immunity

To establish liability under 42 U.S.C. § 1983, a plaintiff must demonstrate that (1) the defendant acted under color of state law, and (2) the defendant deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Learned v. City of Bellevue,* 860 F.2d 928, 933 (9th Cir. 1988). Section 1983 liability generally arises only upon a showing of a defendant's personal participation in the alleged violations.[4] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

The doctrine of qualified immunity acts as a bar against § 1983 claims insofar as the government official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden of proving the existence of a clearly established right at the time of the allegedly impermissible conduct. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). The Court "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). It will not suffice to merely articulate a broad constitutional right. *See id.* at 742. "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id.* "If the plaintiff cannot meet this burden, the inquiry ends and defendants are entitled to summary judgment." *Sepatis v. City and Cnty. of San Francisco*, 217 F. Supp. 2d 992, 997 (N.D. Cal. 2002).

---

[4] In some circumstances, a supervisor or governing body may also be subject to liability under § 1983. These rules are addressed below in section II.B.7.

### 2. Due Process Liberty

Brunner first alleges that she was deprived of her right to liberty under the Fourteenth Amendment. (*See* Dkt. No. 1 at 13.) The Fourteenth Amendment provides that "no State shall deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Brunner asserts that Thor violated this provision by searching for her private information on the Department database and by "compiling dossiers on [Brunner] and her family and friends." (Dkt. No. 1 at 13; Dkt. No. 77 at 8.)

However, Thor did not "act[] under color of state law merely because he was a law enforcement officer." *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996). Rather, Thor's actions must have been related in some way to the performance of his official duties. *See id.* There is no evidence that Thor researched Brunner's personal information as part of any official duty. Rather, the record shows that Thor's conduct was a result of his personal relationship with Brunner. Section 1983 does not apply.

This claim against Thor is DISMISSED.

### 3. Zone of Privacy

Brunner next alleges that she was deprived of her right to privacy because of Thor's unauthorized disclosure of her confidential information. (Dkt. No. 77 at 12.) There is no "general right to privacy" in the U.S. Constitution; rather, this area of the law is left largely to the states. *Katz v. United States*, 389 U.S. 347, 351 (1967). However, there are two "zones of privacy" that are constitutionally-protected: (1) the "individual interest in avoiding disclosure of personal matters," and (2) "the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977).

Brunner alleges that Thor infringed on the first "zone" by revealing the dossiers of her personal information to others, including a "buddy in the Pierce County Sheriff's Office," as well as several Seattle officers. (Dkt. No. 77 at 12.) Again, there is no evidence that this conduct was

part of Thor's official duties. Moreover, Brunner has produced no evidence—only assertions in her brief—that Thor shared her information with anyone else.

This claim against Thor is DISMISSED.

#### 4. Equal Protection /Discriminatory Law Enforcement

Brunner further alleges that Thor's disclosure of her personal information violated the Equal Protection Clause and her right to be free from discriminatory law enforcement. (Dkt. No. 1 at 13.) However, as discussed above, Brunner has not shown that Thor was acting under the color of state law and she submits no evidence to support her claim that Thor distributed her information to other people.

Moreover, she has not provided argument or evidence to show that the Equal Protection Clause applies here. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendant acted with a discriminatory purpose that resulted in a discriminatory effect." *Rosenbaum v. City & County of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007). To establish discriminatory purpose, "a plaintiff must establish that the decision-maker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Id.* To establish discriminatory effect, "the claimant must show that similarly situated individuals were not prosecuted." *Id.* Brunner has made no assertions to this effect and produced no evidence to suggest that Thor acted with discriminatory intent.

This claim against Thor is DISMISSED.

#### 5. Unreasonable Search and Seizure

Brunner also alleges violations of her right "to be free from unreasonable search and seizure." (Dkt. No. 1 at 13.) The Fourth Amendment protects people from unreasonable searches and seizures of "their persons, houses, papers, and effects." U.S. CONST. amend. IV. "[A]n unreasonable search occurs when the intrusion violates both the subject's subjective and society's objective expectations of privacy." *United States v. John*, 2014 WL 2863661 at *7 (D.

Ariz. June 24, 2014) (citing *Katz*, 389 U.S. 347). An unreasonable seizure occurs "only when, by means of physical force or a show of authority, [the] freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980).

Brunner alleges that she was the victim of an unreasonable search when Thor accessed her information and compiled a dossier on her. (Dkt. No. 77 at 12.) However, as has been discussed repeatedly, Brunner fails to show that Thor did so under the color of law. Because he was not a state actor, Thor cannot be held liable under § 1983 for this behavior.

Brunner also argues that she was subjected to an unreasonable seizure when Thor arranged for the Pierce County Sheriff's deputies to show up at her townhouse.[5] (Dkt. No. 1 at 9-10.) There is no direct evidence that Thor orchestrated this incident; however, given that the Court views the evidence in a light most favorable to Brunner, one could conclude from the circumstantial evidence that Thor was somehow involved. Importantly, though, there is again no evidence that Thor was acting under color of state law at the time. Under Brunner's version of the facts, Thor sent a friend of his, who worked at a different law enforcement agency, to harass Brunner under the guise of responding to a fake distress call. While this is disturbing behavior—and a clear abuse of Thor's access to law enforcement resources—there is no showing that Thor was "acting within his scope of employment." *See Van Ort*, 92 F.3d at 835. Rather, Thor was acting "in the ambit of [his] personal pursuits," which, although wholly inappropriate, was "not state action." *See id.* at 835-36 (internal quotes omitted).

This claim against Thor is DISMISSED.

### 6. Excessive Force

Brunner alleges that Thor violated her "right to be free from police use and threat of excessive force." (Dkt. No. 1 at 13.) Under the Fourth Amendment, a person has the right to be

---

[5] In her complaint, Brunner also alleged that Thor had a Seattle Police Officer follow her home and block her in the driveway as he shouted at her for speeding. (Dkt. No. 1 at 8.) She appears to have abandoned this claim on summary judgment. (*See generally* Dkt. No. 75; *see also* Dkt. No. 77 at 12.)

free from excessive force. U.S. CONST. amend. IV. However, Brunner does not provide any more specific allegations or evidence regarding the actual use or threat of excessive force she allegedly experienced. Thus, this claim cannot survive summary judgment.

This claim against Thor is DISMISSED.

### 7. Supervisory Liability/*Monell*

Brunner alleges that Chief Lorentzen and the Department are liable under § 1983 for their role in supervising Thor. (Dkt. No. 1 at 14-15; Dkt. No. 77 at 13.) As noted above, § 1983 liability generally arises only upon a showing of a defendant's personal participation. *Taylor*, 880 F.2d at 1045. However, a supervisor is liable for the constitutional violations of subordinates "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.* A governing body can be sued under § 1983 where the challenged action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).

Brunner identifies no role in—or even knowledge of—Thor's actions by Chief Lorentzen or other Department employees. Brunner thus fails to make a valid supervisory liability claim.

As to her *Monell* claim, Brunner does not assert that Thor acted pursuant to a Department policy or practice. (*See* Dkt. No. 77 at 13-15.) Instead, Brunner alleges that the Department should be held liable for its "failure to supervise to prevent its officers from violating its policies." (Dkt. No. 77 at 14.) As support, she reasons that

> Lake Stevens has found it necessary to enact a policy wherein new officers are warned that they cannot misuse the law enforcement database that they are given access to as part of the job, indicating a likelihood of past problems, or at least a realization that problems may likely occur, and yet the Department took no steps to monitor their officer's use and frequency of use of the databases to determine whether there were any indications of misuse.

(*Id.*)

To make out a § 1983 claim for failure to supervise, a plaintiff must "demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 407 (1997) (quoting *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989)); *see also Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) (analyzing failure to supervise under the same standard as failure to train).

Brunner has only questionably made out a claim of negligence on the Department's behalf. She does not come close to showing—or even alleging—that the Department acted with deliberate indifference.

The § 1983 claims against Chief Lorentzen and the Department are DISMISSED.

**C.   Washington Constitution**

Brunner further asserts that Defendants violated her right to privacy under the Washington Constitution. (Dkt. No. 1 at 15-16.)  Article I, section 7 states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. However, "Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations without the aid of augmentative legislation." *Blinka v. Wash. State Bar Ass'n*, 36 P.3d 1094, 1102 (Wash. Ct. App. 2001) (internal quotes omitted); *see also Reid v. Pierce Cty.*, 961 P.2d 333, 343 (Wash. 1998) (declining to consider whether a constitutional cause of action should be established).

Brunner's Washington constitutional claim is DISMISSED.

**D.   Negligence**

Brunner further asserts that Defendants were negligent in their actions towards her. (Dkt. No. 1 at 16-17.) To establish a cause of action for negligence, a plaintiff must demonstrate that (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) damages resulted, and (4) the defendant's breach proximately caused the damages. *Tincani v. Inland Empire Zoological Soc'y*, 875 P.2d 621, 624 (Wash. 1994).

Brunner asserts that Defendants owed her "a duty to use due care, and to ensure the protection of her safety and privacy, from themselves, and from their fellow officers at all times." (Dkt. No. 1 at 17.) But, "[u]nder the public duty doctrine, no liability may be imposed for a public official's negligent conduct unless it is shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.*, a duty to all is a duty to no one)." *Cummins v. Lewis Cty.*, 133 P.3d 458, 461 (Wash. 2006) (internal quotes omitted). Brunner has identified no particular duty owed to her as an individual.

Brunner's negligence claim is DISMISSED.

### E.   Assault and Battery

Brunner also alleges that Thor committed assault and battery. (Dkt. No. 1 at 17.) Battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent." *McKinney v. City of Tukwila*, 13 P.3d 631, 641 (Wash. Ct. App. 2000). Assault is any act of such a nature that causes apprehension of battery. *Id.*

In her complaint, Brunner alleges that Thor "physically batter[ed] and threaten[ed] her, including threatening her with his service weapon to induce compliance with his wishes." (Dkt. No. 1 at 17.) However, she does not address this claim on summary judgment or provide any evidence that Thor physically battered her.

Instead, Brunner argues that Thor committed assault and battery by cyberstalking her. (Dkt. No. 75 at 3.) Brunner alleges that cyberstalking is tantamount to assault as it causes one to "fear an imminent harmful and offensive touching." (Dkt. No. 75 at 3.) In support, Brunner cites the Washington statute on stalking. (*Id.* at 13.) Under Washington law, cyberstalking is a crime separate and distinct from the crime of stalking.[6] *Compare* Wash. Rev. Code § 9A.46.110 *with*

---

[6] Although the two crimes have similarities, they are not identical. For example, stalking—like assault—requires the victim to have experienced a feeling of apprehension. Wash.

Wash. Rev. Code § 9.61.260(2). Regardless, neither statute provides for a private cause of action. Moreover, the evidence demonstrates that Brunner was unaware of Thor's cyberstalking behavior at the time it occurred. Without evidence that Thor battered her or caused her apprehension that he would do so, this claim cannot survive summary judgment.

Brunner's assault and battery claim is DISMISSED.

### F.      Fraud and Misrepresentation

Finally, Brunner asserts that Thor's false statements about himself constitute fraud and misrepresentation. (Dkt. No. 75 at 14.) Under Washington law, a valid fraud claim has nine elements:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Stieneke v. Russi*, 190 P.3d 60, 69 (Wash. Ct. App. 2008).

Fraud and misrepresentation claims most commonly arise out of business relationships. *See, e.g.*, *Alejandre v. Bull*, 153 P.3d 864, 865 (Wash. 2007) (real property sale); *Stieneke,* 190 P.3d at 64 (same). Here, by contrast, the false statements were of a personal nature, between two people involved in a romantic relationship. It would be quite significant for the Court to find that a person could be held legally responsible for interpersonal statements, and Brunner cites no authority to suggest that such liability exists.

By way of analogy, in the context of negligence, Washington courts have found no legal duty of honest disclosure between spouses. *See In re Marriage of J.T.*, 891 P.2d 729, 732 (Wash. Ct. App. 1995). The Court finds this holding indicative of the Washington courts' approach to legal liability in romantic relationships and applies *Marriage of J.T.* by analogy.

Brunner's fraud and misrepresentation claim is DISMISSED.

---

Rev. Code § 9A.46.110(1)(b); *McKinney*, 13 P.3d at 641. Cyberstalking does not. *See* Wash. Rev. Code § 9.61.206(1).

### III. CONCLUSION

Thor's conduct was deeply troubling. The Court appreciates how traumatic this experience must have been for Brunner. However, the Court is bound to apply the law as written, and the legal claims made here cannot be maintained. The motions for summary judgment (Dkt. Nos. 56, 58) are GRANTED. Brunner's claims are DISMISSED in their entirety.

Given this outcome, Brunner's pending motion to continue trial (Dkt. No. 84) is MOOT. The Clerk is DIRECTED to close this case.

DATED this 21st day of March, 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE